Defendant-appellant, Edward L. McConnell, appeals his conviction in the Middletown Municipal Court for assault. We affirm.
On March 18, 1998, appellant was indicted on one count of assault and one count of aggravated menacing in violation of Sections 636.02(a) and 636.04 of the Middletown Codified Ordinances respectively. The aggravated menacing charge was dismissed by the trial court on June 19, 1998 for lack of speedy trial. The charges stemmed from an incident that occurred on December 28, 1997 wherein appellant, the owner of a gas station in Middletown, Ohio, knocked Kerry P. May ("May") to the ground and pointed a loaded gun at him after May came back to the gas station to pay for gas he had pumped earlier. A jury trial held on August 20, 1998 revealed the following facts:
On the evening of December 28, 1997, May pulled in appellant's gas station and pumped $5 worth of gas. Having no cash on his person, May tried to pay for the gas with a check which the cashier refused. May was then told he would have to either wait for the police or have someone bring the money. May instead told the cashier that he was going to Kroger to cash his check and that he would come back to pay. Thereafter, May left the gas station, went to Kroger, cashed his check, and came back to pay the $5. The record reveals divergent accounts as to what happened next.
May testified that after he paid, he tried to leave the gas station. While he was not calm and may have raised his voice, May denied yelling or throwing the money at appellant or the cashier. May testified that he did not want a confrontation and that he just wanted to leave. May testified however that appellant was trying to instigate a fight and that both appellant and appellant's father were trying to prevent May from leaving the premises by standing by May's driver's door. May testified that as he was trying to get in his car, he was shoved to the ground by appellant and his father. Thereafter, appellant pointed a gun at him. When the police arrived a few minutes later, May was back on his feet and appellant was in the gas station store. May testified that the reason he did not leave after appellant stopped pointing the gun at him and before the police arrived was because he was afraid of more physical confrontations as he "[did not] know what [appellant and his father] would try to do next[.]" May denied using physical force but stated he may have used foul language.
May was already back at the gas station when Allison Hammock ("Hammock") pulled in to get some gas. Hammock testified that she observed May handing or putting something on the counter which was tossed back to him. Thereafter, Hammock observed what looked like a heated conversation between appellant and May. Hammock testified that the two men then came out of the store. Hammock testified that May, who had his hands in his pockets, was trying to stay back and calm and that appellant seemed to be very upset over something. Although she could not remember the "exact time line," Hammock remembered the two men having words and appellant striking May at one point. Hammock testified that after the two men got to May's car, appellant told May he was not going to let him leave, a scuffle ensued, and May ended up on the ground with appellant pointing a gun at him. Hammock testified she did not hear anybody screaming or using foul language. Hammock testified that the only time May was "aggressive" was when appellant was trying to prevent May from leaving the premises.
At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29(A). The trial court denied the motion. Thereafter, Michael D. Holland ("Holland") and Adam W. Rose ("Rose") testified in appellant's defense. Both men testified they observed May use foul language after his check was refused, throw the money on the floor after he came back, and shove appellant, once outside the store. Holland, a regular customer who had been coming to the gas station for about a year, two to three times a day, testified that after he observed May shove appellant, he stopped watching the altercation. Adam, who had been appellant's employee for three and one-half years, testified that while he saw May shove appellant three or four times, he did not see how May ended up on the ground. Adam did observe appellant pointing his gun at May. Betty McConnell, appellant's mother, testified that after May came back, appellant told him to wait for the police outside the store but that May came in the store anyway. McConnell did not see the altercation outside. McConnell testified that when she came out of the store, May was on the ground and that appellant thereafter pointed his gun at him.
Finally, appellant testified on his own behalf. Appellant testified he was in his office upstairs when May came to the gas station the first time. When May came back, appellant met him outside the store and told him to stay outside until the police arrived. Instead, May, all the while shouting obscenities, went into the store and "sl[u]ng his money." Appellant testified that at that point, May "[who] had on an Army jacket * * * was just totally irate." Thereafter, the two men went back outside. Appellant testified that as he was standing between the driver's door of May's car and the bumper on the driver's side, May "just totally [went] off" and shoved appellant who went backwards. Appellant testified that as he was coming back up, May started to come back at him which prompted appellant to shove May to get May away from him. May fell backwards to the ground. Appellant testified that as May "was rolling to come back up off the ground at [him] again[,]" he held his gun to May for five to ten seconds because he "was scared, you know, a guy in an Army jacket, a guy who is totally out of it[.]" After May calmed down, appellant put the gun away and kept it on his person until the police arrived.
At the close of the evidence, appellant renewed his motion for a judgment of acquittal under Crim.R. 29(A). The trial court denied the motion. Thereafter, a jury found appellant guilty as charged. This appeal followed.
In his sole assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29(A) motion. Within the assignment, appellant also argues that his conviction is against the manifest weight of the evidence.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. This court's standard of review of a claim of insufficient evidence was set forth in State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, * * * followed).
In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony.State v. Thompkins (1997), 78 Ohio St.3d 380, 389. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In the case at bar, appellant was convicted of assault in violation of Section 636.02(a) of the Middletown Codified Ordinances which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." May testified that he was shoved to the ground by appellant and his father. Hammock testified seeing appellant strike May at one point and that following a scuffle between the two men, May ended up on the ground. Interestingly, none of the witnesses for the defense saw how May ended up on the ground. However, appellant testified that he shoved May who fell backwards. It is undisputed that appellant pointed a loaded gun at May.
Based upon the foregoing, we find that evidence that appellant shoved May hard enough to cause May to fall to the ground and thereafter pointed a loaded gun at May is sufficient to support a conviction for assault under Section 636.02(a) of the Middletown Codified Ordinances. In addition, based upon the record before us, we find no reason to upset the jury's evaluation of the credibility of the witnesses and the weight to be given the evidence. See DeHass, 10 Ohio St.2d 230. We therefore find that appellant's conviction was supported by sufficient evidence and that it was not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.